IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TZE GLOBAL DIS TICARET A.S. : CIVIL ACTION No.
         : 20-CV-02600
  V.      :
         :
PAPERS UNLIMITED, INC.  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.       May 4, 2023


## Contents

I.   BACKGROUND ............................................... 2

II.   LEGAL STANDARDS ........................................ 5

  A.   Rule 50 ............................................ 5

  B.   Rule 59(a) ......................................... 6

  C.   Rule 59(e) ......................................... 7

III.   DISCUSSION ............................................ 7

  A.   PU's Rule 50(b) Motions for Judgment on the Pleadings ... 7

   1.   Evidence of the Terms of the Essity Contract .......... 9

   2.   Evidence of Contract Damages ........................ 12

   3.   Tortious Interference with Business Relations and the Gist of the Action Doctrine ............................. 13

   4.   The Intent Requirement for Tortious Interference with Business Relationships ................................. 15

   5.   Joinder of Indispensable Parties ..................... 16

  B.   PU's Rule 59(a) Motions for a New Trial ............... 18

   1.   The Introduction of Non-Disclosed Evidence at Trial ... 19

   2.   The Inclusion of TZE's Conversion Count on the Verdict Sheet ................................................. 23

   3.   The Inclusion of TZE's Tortious Interference with Business Relations Claim on the Verdict Sheet ............. 24

  C.   PU's Rule 59(e) Motions to Amend the Judgment ......... 25

   1.   The Judgment for Breach of Contract .................. 25

   2.   The Judgment for Tortious Interference ............... 26

  D.   TZE's Motion to Amend the Judgment to Include Interest . 27

    1.    Prejudgment Interest .................................. 28

    2.    Post-Judgment Interest ............................... 34

IV.  CONCLUSION ............................................ 35

Pending before the Court are Defendant Papers Unlimited's ("PU") post-trial motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), a new trial under Federal Rule of Civil Procedure 59(a), and to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). For the reasons that follow, the Court will deny these motions.

Also pending before the Court is the motion to amend the judgment to include interest filed by Plaintiff TZE Global Dis Ticaret A.S. ("TZE"). For the following reasons, the Court will grant TZE's motion for pre and post-judgment interest.

## I.  BACKGROUND[1]

On January 13, 2023, after a 3-day trial, the jury returned a verdict in favor of TZE and against PU in the amount of $935,796.20. The jury awarded TZE $585,796.20 for PU's breach of its brokerage contract with TZE, and $350,000 to compensate TZE for PU's tortious interference with TZE's business relationship with a third-party, Essity Higiene Y Salud México, S.A. de C.V.

---

[1]    When citing to the trial transcripts, the Court will use the following abbreviations:
Tr.1: Trial Transcript for Day 1 (Jan. 10, 2023) (ECF No. 88).
Tr.2: Trial Transcript for Day 2 (Jan. 11, 2023) (ECF No. 89).
Tr.3: Trial Transcript for Day 3 (Jan. 12, 2023) (ECF No. 90).

("Essity"). The jury rejected TZE's additional breach of contract claim concerning direct sales of paper products to PU as well as TZE's alternative claims of conversion and unjust enrichment. Likewise, the jury rejected PU's claim of tortious interference with business relations.

TZE is a paper manufacturer and PU is in the business of buying and selling paper products. In 2019, PU agreed to broker the sale of toilet paper between TZE in Turkey and Essity in Mexico. Under this arrangement, TZE shipped the paper directly to Essity, Essity paid PU the invoice amount, and PU remitted the payment, less a commission, to TZE. This arrangement functioned until Essity refused to pay the full invoice amount for one series of shipments because it claimed the paper received was partially defective. Instead of paying $618,796.20, the amount of the invoices, Essity paid PU $508,851.38. PU unilaterally accepted the price reduction and collected the reduced amount. PU told TZE about the alleged quality issue and TZE objected to PU accepting the reduced amount. PU then refused to remit any of Essity's payment to TZE. Both parties sued for, inter alia, breach of contract and tortious interference with business relations.[2]

---

[2]    PU withdrew its breach of contract claim during the trial. Tr.2 204:11-14.

The basic terms of the brokerage agreement between TZE and PU regarding Essity are found in a March 22, 2019 email from Cem Akpinar, the Finance Director of TZE, to Dustin Seidman, the Vice President and Chief Operating Officer of PU, which provided that:

    1. [TZE will] continue preparing [its] papers (including [its] invoices) in the name of Essity.

    2. [TZE will] continue to send the goods directly to Essity.

    3. Essity pays [PU] and [PU] pays [TZE], deducting [PU's] commission that [PU] agreed upon by [TZE] earlier.

    4. While making the money transfer to [TZE, PU will] send [PU's] invoice for [PU's] commission that [PU has] already deducted from the payment.

    Provided that:

    1. [PU has] received [TZE's] confirmation on the commission amount to be deducted from [PU's] payment.

    2. [PU's commission deductions are made on a per invoice basis rather than PU aggregating its commissions over several transactions and deducting them from a single money transfer back to TZE.]

    3. [PU] state[s] on the swift message that [PU is] doing the money transfer in the name of Essity.

Trial Ex. 14 at 1-2, Pl.'s Resp. Ex. A, ECF No. 106-2; see also Tr.1 at 79:17-23; Tr.2 at 133:11-14, 135:7-15.[3]

Akpinar and Seidman were the only trial witnesses. TZE's breach of contract claim was based on PU's failure to send TZE

---

[3]    The Court will refer to this main contract as the "Essity contract."

the money owed by Essity under the final invoices. TZE's
tortious interference with business relations claim stemmed from
PU interfering with TZE's and Essity's relationship by, inter
alia, portraying TZE as an unprofessional and unreliable company
in an email to Essity.

## II.   LEGAL STANDARDS

### A.   Rule 50

Federal Rule of Civil Procedure 50 permits a party to seek
judgment as a matter of law on any issues for which it contends
"a reasonable jury would not have a legally sufficient
evidentiary basis to find for the party on that issue," and
that, without "a favorable finding on that issue," the opposing
party cannot maintain its claim. Fed. R. Civ. P. 50(a)(1).

> A Rule 50 motion

> should be granted only if, viewing the evidence in the
> light most favorable to the nonmovant and giving it the
> advantage of every fair and reasonable inference, there
> is insufficient evidence from which a jury reasonably
> could find liability. In determining whether the
> evidence is sufficient to sustain liability, the court
> may not weigh the evidence, determine the credibility of
> witnesses, or substitute its version of the facts for
> the jury's version.

McDaniels v. Flick, 59 F.3d 446, 453 (3d Cir. 1995) (quoting
Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir.
1993)). "Although judgment as a matter of law should be granted
sparingly, [a court] will grant it where 'the record is
critically deficient of the minimum quantum of evidence' in

support of the verdict." <u>Eshelman v. Agere Sys., Inc.</u>, 554 F.3d 426, 433 (3d Cir. 2009) (quoting <u>Gomez v. Allegheny Health Servs., Inc.</u>, 71 F.3d 1079, 1083 (3d Cir. 1995)).

A Rule 50(a) motion may be raised at any time during trial after the opposing party has been fully heard on an issue and before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). If the Rule 50(a) motion is denied, or if judgment is reserved, the motion must be renewed pursuant to Rule 50(b) in a post-trial filing. <u>See</u> <u>Chainey v. Street</u>, 523 F.3d 200, 218 (3d Cir. 2008) ("[A] defendant's failure to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiffs on notice waives the defendant's right to raise the issue in their Rule 50(b) motion." (quoting <u>Williams v. Runyon</u>, 130 F.3d 568, 571-72 (3d Cir. 1997))); <u>Lightning Lube, Inc.</u>, 4 F.3d at 1172 ("In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion.").

## B.   **Rule 59(a)**

Under Federal Rule of Civil Procedure 59(a), a "court may, on motion, grant a new trial on all or some of the issues--and to any party-- . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at

6

law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, 'where a miscarriage of justice would result if the verdict were to stand.'" Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001) (quoting Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 289 (3d Cir. 1993)).

### C.   Rule 59(e)

A Rule 59(e) motion to alter or amend a judgment requires either: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." In re Processed Egg Prods. Antitrust Litig., 962 F.3d 719, 729 (3d Cir. 2020) (quoting Wiest v. Lynch, 71 F.3d 121, 128 (3d Cir. 2013)). "In reviewing the propriety of a jury verdict, [the court's] obligation is to uphold the jury's award if there exists a reasonable basis to do so," and, thus, the court may disturb the verdict only if it is "so unreasonable as to offend the conscience of the Court." Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989) (quoting Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir. 1979)).

## III. DISCUSSION

### A.   PU's Rule 50(b) Motions for Judgment on the Pleadings

During the trial, PU raised three grounds for judgment as a matter of law under Rule 50(a): (1) TZE's intentional

interference claim should be dismissed because there was no evidence of a contract between TZE and Essity, Tr.2 at 198:18-204:4; (2) TZE's unjust enrichment claim could not simultaneously be pursued with a breach of contract claim, Tr.2 at 204:19-206:1; and (3) TZE's conversion claim should be dismissed under the gist of the action doctrine because it was duplicative of TZE's contract claim, Tr.2 at 206:3-211:10. The Court reserved judgment on all three of these Rule 50(a) motions.

In its current "renewed" motion for judgment as a matter of law under Rule 50(b), PU seeks judgment on TZE's contract claim on the grounds that: (1) the essential terms of the Essity contract were not adduced at trial; and (2) the contract damages were not supported by the evidence. PU seeks judgment as a matter of law on TZE's tortious interference claim on the grounds that: (1) it is barred by the gist of the action doctrine; and (2) TZE failed to prove the element of intent. PU also contends that TZE failed to join Essity as an indispensable party under Fed. R. Civ. P. 19.

In that PU failed to raise any of its current Rule 50(b) arguments at the close of evidence in its Rule 50(a) motion, PU has waived them. Lightning Lube, Inc., 4 F.3d at 1172. Nonetheless, PU's arguments are also meritless. For the sake of

completeness, the Court will address the waived arguments on the merits.

### 1.   Evidence of the Terms of the Essity Contract[4]

PU asserts that TZE failed to adduce at trial the essential elements of the Essity contract between PU and TZE and, thus, TZE failed to establish its breach of contract claim. Therefore, PU contends that it is entitled to judgment as a matter of law on TZE's Essity contract claim. Specifically, PU asserts that TZE's contract claim fails because TZE never produced evidence of: (1) who made and who accepted the offer; (2) whether the contract was oral or written; (3) when the contract was entered into; (4) the amount of consideration for the contract and the commission percentage; (5) the quantity of paper; (6) how many deliveries there would be and at what interval; and (7) details of how defects would be handled.

---

[4]     In a somewhat confusing argument, PU also argues that TZE failed to prove the terms of TZE's contract with Essity and TZE's contract with PU regarding the direct sale of paper products from TZE to PU (which was a separate contract from the Essity contract). Neither line of inquiry has any relevance. As discussed further below, TZE's tortious interference claim is based on TZE's current and prospective business relations with Essity. Whether the two businesses had an enforceable contract is of no moment. Likewise, because the jury found no breach of a contract between TZE and PU for the direct sale of goods, there would have been no harm even if TZE had failed to proffer sufficient evidence of that agreement. See Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

Under Pennsylvania law, a contract is formed "when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity." Helpin v. Trustees of Univ. of Pa., 969 A.2d 601, 610 (Pa. Super. 2009), aff'd, 10 A.3d 267 (Pa. 2010) (quoting Weavertown Transp. Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa. Super. 2003)). "A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Pennsy Supply, Inc. v. Am. Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. 2006) (quoting Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

"While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." Id.; Helpin, 969 A.2d at 611 (same). "In the event that an essential term is not clearly expressed in their writing but the parties' intent concerning that term is otherwise apparent, the court may infer the parties' intent from other evidence and impose a term consistent with it," including using the parties' actual performance to define an unclear term. Helpin, 969 A.2d at 611.

The terms PU claims were missing at trial were either established at trial or nonessential. As stated, TZE's claim for

breach of the Essity contract was based on PU's failure to remit payment to TZE for amounts which PU had received from Essity for TZE's paper. As also provided above, the March 22, 2019 email between the parties describes the basic mechanics of the brokerage arrangement under the Essity contract including that: (1) TZE would directly ship the paper to Essity and prepare all invoices for Essity; (2) Essity would pay the full amount of the invoices to PU; (3) PU would deduct its commission and remit the remainder to TZE. See Trial Ex. 14, Pl.'s Resp. Ex. A, ECF No. 106-2. The evidence also shows that TZE's final sale of goods to Essity was for $618,796.20, which TZE shipped in three parts, resulting in three invoices. Tr.1 at 101:7-103:14, 107:1-9; Trial Ex. 13, Pl.'s Resp. Ex. B, ECF No. 106-3. The terms of each invoice required Essity to make payment 60 days after the date of the invoice. Tr.1 at 102:3-9; Trial Ex. 13, Pl.'s Resp. Ex. B, ECF No. 106-3. PU was required to make payment to TZE immediately after receiving payment from Essity. See Tr.1 at 69:12-13.

The parties' successful past performance of the agreement is further evidence of the existence and terms of the Essity contract. Helpin, 969 A.2d at 611. Akpinar's and Seidman's testimony at trial confirmed that PU had successfully paid fourteen previous invoices under the mechanism outlined in the

Essity contract before Essity refused to pay the full amount of
the final order. Tr.2 at 68:23-69:11; 70:7-15; 138:4-8, 14-22.

This evidence, taken together, is sufficient for a jury to
have reasonably found that the parties reached a mutual
understanding, exchanged consideration, and delineated the terms
of their bargain with sufficient clarity. Helpin, 969 A.2d at
610. Thus, even if the argument had not been waived, PU would
not have been entitled to judgment as a matter of law on this
claim.

### 2.   Evidence of Contract Damages

PU contends that there is no rational explanation, nor was
there evidence presented, that would support the jury award of
$585,796.20 to TZE for the breach of the Essity contract since
Essity only paid PU $508,851.38 on the relevant invoices. "All
that the law requires is that 'a claim for damages must be
supported by a reasonable basis for calculation; mere guess or
speculation is not enough.'" Kaczkowski v. Bolubasz, 421 A.2d
1027, 1030 (Pa. 1980) (quoting Stevenson v. Econ. Bank of
Ambridge, 197 A.2d 721, 727 (Pa. 1964)). PU argues that, because
there was no reasonable basis for the jury award, it is entitled
to judgment as a matter of law on TZE's Essity contract claim.

PU's argument has no merit as there is a very reasonable
explanation for how the jury likely arrived at $585,796.20. The
final invoices for which TZE was not paid amounted to

$618,796.20. Tr.1 at 107:1-9; Trial Ex. 13, Pl.'s Resp. Ex. B, ECF No. 106-3. Akpinar and Seidman confirmed that the maximum commission PU could have received from the disputed invoices was approximately $33,000. Tr.2 at 18:1-23, 20:19-21:3, 149:22-150:3. Therefore, the jury could reasonably have found that the damages necessary to put TZE "in as good a position as [it] would have been had the [Essity C]ontract been performed," rather than breached, was equal to $618,796.20 less $33,000, which is $585,796.20, the exact amount of the jury award. Trosky v. Civ. Serv. Comm'n, 652 A.2d 813, 817 (Pa. 1995) (quoting Restatement (Second) of Contracts, § 344, Cmt. a). Because there is a reasonable basis for the jury's award, even if this argument had not been waived, PU would not have been entitled to judgment as a matter of law on this ground.

### 3.   Tortious Interference with Business Relations and the Gist of the Action Doctrine

The gist of the action doctrine "operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. 2003). For example, "[a] tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it." Brown & Brown, Inc. v. Cola, 745 F.

Supp. 2d 588, 621 (E.D. Pa. 2010) (quoting <u>Alpart v. Gen. Land</u>
<u>Partners, Inc.</u>, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008)).

    PU contends that TZE's claim of tortious interference with
TZE's and Essity's business relations is barred by the gist of
the action doctrine because TZE's claims of breach and tortious
interference are both based on the Essity contract. PU claims
that there is no material difference between the conduct that
caused the breach of contract and the conduct that TZE used to
support its tortious interference claim. PU also argues that
there was no evidence produced at trial of a contractual
relationship between TZE and Essity.

    TZE's breach of contract claim was based on PU's breach of
the Essity contract by failing to pay the amounts owed to TZE.
By contrast, TZE's tortious interference claim was based on PU's
improper conduct regarding the TZE-Essity business relationship.
TZE produced evidence of PU's tortious misconduct separate from
the Essity contract including that PU sent an email to Essity
"badmouthing" TZE by claiming that TZE was "not professional,"
had a "lack of support and confidence in their paper quality,"
was "not an honest worthy company," and was "dishonest and non-
supportive." Trial Ex. 49, Pl.'s Resp. Ex. D, ECF No. 106-5;
Tr.1 at 125:7-126:14.

    Moreover, PU's argument that there was no evidence of the
terms of a contract between TZE and Essity has no merit. A claim

of tortious interference requires "the existence of a
contractual, or prospective contractual relation . . ." CGB
Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d
375, 384 (3d Cir. 2004) (quoting Crivelli v. Gen. Motors Corp.,
215 F.3d 386, 394 (3d Cir. 2000)) (emphasis added). An actual
contract between the relevant parties is not a requirement.

The Court concludes that the evidence presented could have
reasonably led the jury to find that the PU's interference with
the TZE-Essity business relationship did not arise as a function
of the Essity contract. Thus, had it not been waived, PU would
still not have been entitled to judgment as a matter of law on
this ground.

### 4.    The Intent Requirement for Tortious Interference with Business Relationships

In addition to the existence of an existing or prospective
contractual relationship, tortious interference requires, inter
alia, "purposeful action on the part of the defendant,
specifically intended to harm the existing relation, or to
prevent a prospective relation from occurring . . ." Id.
(quoting Crivelli, 215 F.3d at 394). PU argues that TZE failed
to offer evidence that PU had the specific intent to harm the
TZE-Essity relationship.

"Intent can be inferred from a defendant's 'purposeful
action' when he or she 'knows that the interference is certain

or substantially certain to occur.'" <u>Am. Osteopathic Ass'n v.</u>
<u>Am. Bd. of Internal Med.</u>, 555 F. Supp. 3d 142, 150 (E.D. Pa.
2021) (quoting <u>Odyssey Waste Servs., LLC v. BFI Waste Sys. of N.</u>
<u>Am., Inc.</u>, No. 05-CV-1929, 2005 WL 3110826, at *5 (E.D. Pa. Nov.
18, 2005)). Moreover, only the intent to interfere is required,
not ill will or malice. <u>Ruffing v. 84 Lumber Co.</u>, 600 A.2d 545,
550 (Pa. Super. 1991).

Here, there is evidence from which a jury could have
reasonably concluded that PU intended to interfere with the TZE-
Essity business relationship. For example, PU sent an email to
Essity in which it made disparaging remarks about TZE and its
business. Trial Ex. 49, Pl.'s Resp. Ex. D, ECF No. 106-5; Tr.1
at 126:12-14. The jury could have reasonably concluded from the
evidence produced at trial that PU knew or was substantially
certain that its conduct would result in harm to TZE's business
relationship with Essity. Thus, even if this argument had not
been waived, it would not have entitled PU to judgment as a
matter of law.

### 5.   Joinder of Indispensable Parties

Under Federal Rule of Civil Procedure 19,

[a] person who is subject to service of process and whose
joinder will not deprive the court of subject-matter
jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord
complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a third party is required under Rule 19(a), Federal Rule of Civil Procedure 19(b) dictates whether they are indispensable. Under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

PU claims that Essity was an indispensable party. Specifically, PU argues that the Court should consider Essity a co-obligee with PU since "Essity was alleged to have been part of the Contract" and that Essity was to pay PU and PU was to pay TZE. Def.'s Mot. ¶ 62, ECF No. 97-2 at 19; see Dickson v. Murphy, 202 F. App'x 578, 580 (3d Cir. 2006) ( "[C]o-obligees usually are indispensable parties.").

PU has waived this claim by failing to raise it in a motion to dismiss as required under Federal Rule of Civil Procedure 12(b). Fed. R. Civ. P. 12(b)(7) ("A motion asserting [inter

17

alia, failure to join a party under Rule 19] must be made before pleading if a responsive pleading is allowed."). And even if this were not the rule, as discussed above, PU would have waived the argument by failing to raise it in its Rule 50(a) motions.

Nonetheless, PU's contention lacks merit. The evidence showed that the Essity contract was a brokerage "agreement between PU and TZE," that did not include Essity. Tr.2 at 133:12-14. Moreover, PU has failed to explain how Essity is a joint obligee, which is "[o]ne to whom an obligation is owed; a promisee, creditor, or donor beneficiary." OBLIGEE, Black's Law Dictionary (11th ed. 2019). There was no evidence introduced at trial of a duty owed to Essity in connection with the Essity contract. Thus, PU has failed to prove that Essity is necessary party under Rule 19(a), and the Court does not proceed to the Rule 19(b) analysis. Bank of Am. Nat.'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 (3d Cir. 1988) ("If the answer to the first question [in Rule 19(a)] is no . . . then the inquiry need go no further."). Therefore, PU would not have been entitled to judgment as a matter of law on this ground.

### B.   PU's Rule 59(a) Motions for a New Trial

PU raises three grounds in its motion for a new trial: (1) TZE impermissibly introduced evidence in the form of a credit acknowledgment between PU and Essity that was not produced

during discovery; (2) TZE's conversion claim should not have been presented to the jury; and (3) TZE's tortious interference with business relations claim should not have been presented to the jury. All PU's arguments lack merit.

      1.   The Introduction of Previously Undisclosed Evidence at Trial

PU contends that it is entitled to a new trial because the Court allowed TZE to use previously undisclosed evidence. While on cross-examination, PU's COO and VP, Seidman, testified that it was "[n]ot true" that PU issued a "credit letter, or credit memo, or credit acknowledgement" to Essity for the $109,944.82 that Essity refused to pay on the invoices from the final paper shipment. Tr.2 at 167:3-6. When TZE's counsel sought to confirm Seidman's testimony, Seidman said "I'm positive" that PU did not issue a credit acknowledgment. Id. at 167:9-10.

TZE's counsel then produced Trial Exhibit 50, which is a one-page letter sent by PU to Essity, titled "Credit Acknowledgment," signed by Seidman, and addressing a "credit pending of $109,944.82" for the allegedly defective paper. Trial Ex. 50, Pl.'s Resp. Ex. E, ECF No. 106-6. TZE's counsel offered the letter into evidence to impeach Seidman. PU's counsel objected to the authenticity of the letter, asserting that it had never been produced during discovery and PU's counsel claimed to have no knowledge of the letter. Tr.2 167:11-170:7.

The Court allowed the use of the letter for impeachment purposes. Tr.2 169:7-170:3.

Seidman then authenticated the letter on the stand by testifying that he had seen it before and that he had signed it. Tr.2 170:9-16; 171:3-13. TZE's counsel then moved to enter Trial Exhibit 50 into evidence and requested it be published to the jury. Tr.2 170:17-21. PU's counsel stated that he had no objection. Tr.2 170:22.[5]

PU claims that TZE had a duty to disclose the letter during discovery and even seeks sanctions for TZE's failure to do so, alleging that TZE's use of Trial Exhibit 50 was significantly prejudicial. However, Trial Exhibit 50 is a document that was created by PU, which PU failed to produce during discovery. TZE asserts that it did not receive the letter until five days before the trial when Essity produced the letter in response to

---

[5]     In light of defense counsel's statement that he had no objection to the evidence and his failure to ask for a limiting instruction, PU has waived this ground for a new trial. See Ghee v. Marten Transp., Ltd., 570 F. App'x 228, 231 (3d Cir. 2014) (affirming the denial of motion for a new trial because "the request for a new trial could not have rested on an objection that the defendants wholly failed to lodge"). Likewise, while PU argues that TZE impermissibly used Trial Exhibit 50 for its substance during TZE's closing argument, PU failed to raise such an objection at the time. See Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998) ("[I]t is clear that a party who fails to object to errors at trial waives the right to complain about them following trial."). Nonetheless, the Court will again discuss the merits of the waived argument for the sake of completeness.

TZE's request for any existing credit letters or acknowledgments between PU and Essity. The monumental irony in PU seeking sanctions regarding a document that was created by PU, which PU had a duty to disclose but failed to do so, and which PU now argues was a "key piece of evidence" of a "critical nature," is not lost on the Court. Def.'s Mot. at 11, 13, ECF No. 102.

Even if TZE had obtained Trial Exhibit 50 earlier, evidence used solely for impeachment need not be produced during discovery. Fed. R. Civ. P. 26(a)(1)(A)(ii) (mandating disclosure of "all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, underline the use would be solely for impeachment" (emphasis added)); Fed. R. Civ. P. 26(a)(3)(A) (providing that parties must disclose all "evidence that it may present at trial other than solely for impeachment"). A review of the trial record shows that TZE limited its use of Trial Exhibit 50 during its cross examination of Seidman to impeachment; thus, TZE's disclosure and use of the letter was proper. See Tr.2 at 173:12-175:1.

PU also argues that TZE used Trial Exhibit 50 for its substance rather than impeachment during TZE's closing argument. However, in making this argument, PU selectively quotes from TZE's closing. Reading the relevant section in whole, TZE begins by stating "Credibility, it matters," continues by discussing

21

Seidman's denial of a credit acknowledgment and how that was inconsistent with the evidence, repeating "credibility matters," discussing Seidman's attempts to distinguish his testimony from the content of Trial Exhibit 50, and finally, concluding with, "credibility matters." Tr.3 53:21-54:23. A reading of the transcript shows that TZE used Trial Exhibit 50 solely for impeachment and that it was properly admitted by this Court for that purpose. See Tasco v. IBEW, Loc. #98, 634 F. App'x 94, 96 (3d Cir. 2015) (affirming the district court's admission of late disclosed documents because they were used solely for impeachment purposes and were largely authored by the party against whom they were used).

PU also argues that no one authenticated the document. This is demonstrably false given that PU's sole witness, Seidman, authenticated the document on the stand. Tr.2 170:9-16; 171:3-13.

Thus, the Court concludes there is no merit to PU's contention that the Court erred in allowing TZE to use impeachment evidence that was not previously disclosed. PU has failed to show a miscarriage of justice that would warrant a new trial.

2.   The Inclusion of TZE's Conversion Count on the
     Verdict Sheet

PU contends that it is entitled to a new trial because the
Court erred in allowing TZE's conversion claim to go to the jury
along with its contract claim, since the gist of the action
doctrine prohibited TZE's contract claim to be recast as a
conversion claim. Pittsburgh Constr. Co., 834 A.2d at 581. The
Court agreed with both parties that if the jury found a breach
of contract, it could not also find conversion based on the
conduct that made up the breach of contract. See Tr.2 207:19-
211:10.

First, given that TZE did not prevail on its conversion
claim, there can be no harm to PU and, thus, no grounds for a
new trial. See Fed. R. Civ. P. 61; Tourtellotte v. Eli Lilly &
Co., 636 F. App'x 831, 855 (3d Cir. 2016) ("An error is harmless
'only if it is highly probable that the error[ ] did not affect
the outcome of the case.'" (quoting Hirst v. Inverness Hotel
Corp., 544 F.3d 221, 228 (3d Cir. 2008))). The verdict would
have been the same with or without the submission of the
conversion claim to the jury: TZE would not have prevailed on
the claim.

Second, as stated, the Court acknowledged this issue, but
concluded that if the jury found there was no contract between
PU and TZE, it could have conceivably found conversion of the
funds Essity gave to PU for TZE's goods. Tr.2 208:18-22. Had the

23

jury found both breach of the Essity contract and conversion, the Court told the parties that it would conform the verdict by removing any damages associated with the conversion claim. Tr.2 208:18-22; 211:7-10.

Because there is no miscarriage of justice and the inclusion of the conversion claim did not harm PU, PU is not entitled to a new trial on this ground.

### 3.   The Inclusion of TZE's Tortious Interference with Business Relations Claim on the Verdict Sheet

PU contends that the Court erred in submitting to the jury TZE's claim of PU's tortious interference with the TZE-Essity business relationship because the gist of the action doctrine bars that claim in light of the allegedly duplicative Essity contract claim. As stated above in Section III.A.3, PU's argument has no merit as the two claims were not so intertwined that the gist of the action doctrine barred TZE's tortious interference claim. TZE's breach of contract claim was based on PU's breach of the Essity contract by failing to pay amounts owed to TZE. TZE's tortious interference claim was based on PU's conduct that disrupted TZE and Essity's business relationship, including disparaging TZE to Essity. Being that there was no miscarriage of justice in submitting both claims to the jury, PU is not entitled to a new trial on this ground.

### C.   PU's Rule 59(e) Motions to Amend the Judgment

PU seeks to amend the judgments for both breach of contract and tortious interference based on a need to correct a perceived clear error and to prevent manifest injustice.

### 1.   The Judgment for Breach of Contract

PU argues that any judgment for breach of contract must be capped at $508,852.38 because that was the amount Essity paid PU under the disputed invoices. PU further asserts that there is no evidence to support the jury's award of $585,796.20.

The Court rejected this argument above in Section III.A.2. As stated therein, there is a reasonable explanation for how the jury likely arrived at $585,796.20 as damages for the contract claim. The final invoices for which TZE was not paid amounted to $618,796.20. Tr.1 at 107:1-9; Trial Ex. 13, Pl.'s Resp. Ex. B, ECF No. 106-3. Akpinar and Seidman confirmed that the maximum commission PU could have received from the disputed invoices was approximately $33,000. Tr.2 at 18:1-23, 20:19-21:3, 149:22-150:3. Therefore, the jury could reasonably have found that the damages necessary to compensate TZE were equal to $618,796.20 less $33,000, or $585,796.20.

Because the Court concludes that there is a reasonable basis to uphold the jury's award, amendment of the judgment on this ground is unwarranted.

25

2.   <u>The Judgment for Tortious Interference</u>

PU asserts that there is no evidence to support the $350,000 award for tortious interference and argues that damages cannot be based on guesswork or speculation. <u>Kaczkowski</u>, 421 A.2d at 1030.

The Court disagrees that there is no rational basis for this award. A prevailing plaintiff in a tortious interference claim is entitled to recover damages for pecuniary losses, emotional distress, and loss of reputation. <u>Pelagatti v. Cohen</u>, 536 A.2d 1337, 1343 (Pa. Super. 1987). The evidence demonstrated, inter alia, that: (1) the TZE-Essity relationship was profitable to TZE, resulting in $120,000-$140,000 profit per month, Tr.1 at 133:17-24; (2) TZE lost its business relationship with Essity as a result of PU's interference, Tr.1 at 57:13-17, 135:23-25; (3) TZE normally seeks to develop long-term relationships with its customers, Tr.1 at 134:22-135:6; (4) PU admitted the sale of TZE's paper to Essity could have continued for as long as "five years, ten years, 15 years," Tr.2 at 183:17-184:2; and (5) PU disparaged TZE to Essity by calling TZE a dishonest and untrustworthy company. Tr.1 at 56:22-57:2; 125:7-126:11; Trial Ex. 49, Pl.'s Resp. Ex. D, ECF No. 106-5.

The jury likely relied on this evidence to rationally conclude that TZE's pecuniary and reputational losses amounted to $350,000 and their verdict does not shock the conscience.

Indeed, utilizing this evidence, the jury could have found that TZE was entitled to more than $350,000, which also tends to indicate that its award is not unsupportable or shocking to the Court's conscience. <u>Motter</u>, 883 F.2d at 1230. Thus, PU has failed to raise a valid ground to amend the jury's award for tortious interference damage.

### D.   <u>TZE's Motion to Amend the Judgment to Include Interest</u>[6]

As provided above, the judgment awarded to TZE was comprised of: (1) $585,796.20 in damages for PU's breach of its contract with TZE, and (2) $350,000.00 in damages for PU's tortious interference with the TZE-Essity business relationship. TZE moves under Federal Rule of Civil Procedure 59(e) for prejudgment interest and under Federal Rule of Civil Procedure 60(a) for post-judgment interest for both parts of the judgment.

---

[6]     In its response to this motion, PU challenges TZE's bill of costs. This challenge is premature since the Clerk of Court has not yet taxed any costs in the case. Loc. R. Civ. P. 54.1(b) (providing that within seven days of taxation, a party may object thereto by filing "a written specification of the items objected to and the grounds of objection").

1.   <u>Prejudgment Interest</u>[7]

a.   <u>Prejudgment Interest for Breach of Contract</u>

In federal cases based on diversity jurisdiction, the Court must apply state law to determine the rate of prejudgment interest. <u>Yohannon v. Keene Corp.</u>, 924 F.2d 1255, 1265 (3d Cir. 1991). Thus, Pennsylvania law applies to this issue.

"Under Pennsylvania law, the award of prejudgment interest in a contract action is not discretionary; it is a legal right to which a prevailing party is entitled." <u>ECEM Eur. Chem. Mktg. B.V. v. Purolite Co.</u>, 451 F. App'x 73, 79 (3d Cir. 2011) (citing <u>Fernandez v. Levin</u>, 548 A.2d 1191, 1193 (Pa. 1988)). Pennsylvania has adopted section 354 of the Restatement (Second) of Contracts, which provides:

> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount

---

[7]   PU incorrectly argues that TZE waived any rights to prejudgment interest by failing to offer evidence at trial of its right thereto. This argument fails because the right to and rate of interest arose under state law rather than under the contract, so there was no issue of fact for the jury to decide and no reason to raise the issue. <u>See, e.g.</u>, <u>Nutrition Mgmt. Servs. Co. v. Harborside Healthcare Corp.</u>, No. 01-CV-0902, 2005 WL 1176048, at *3 (E.D. Pa. May 17, 2005), aff'd, 181 F. App'x 315 (3d Cir. 2006) (providing that "it is the role of the jury to determine the terms of a disputed contract between the parties" including contractually agreed upon interest rates for breach). TZE did not waive its right to pre-judgment interest.

due less all deductions to which the party in breach is
entitled.

(2) In any other case, such interest may be allowed
as justice requires on the amount that would have been
just compensation had it been paid when performance was
due.

Restatement (Second) of Contracts § 354 (Am. L. Inst. 1981);

Fernandez, 548 A.2d at 1193. "In claims that arise out of a

contractual right, interest has been allowed at the legal rate

from the date that payment was wrongfully withheld, where the

damages are liquidated and certain, and the interest is readily

ascertainable through computation." Pittsburgh Const. Co., 834

A.2d at 590 (quoting Daset Min. Corp. v. Indus. Fuels Corp., 473

A.2d 584, 595 (Pa. Super. 1984)).

Unless otherwise specified by the parties, "the rate of

[prejudgment] interest [is] six per cent per annum." 41 Pa.

Stat. Ann. § 202; Russo v. Abington Mem'l Hosp. Healthcare Plan,

257 F. Supp. 2d 784, 790 (E.D. Pa. 2003) ("[T]he rate of

prejudgment interest is calculated as simple interest at a rate

of six percent per year." (quoting McDermott v. Party City

Corp., 11 F. Supp.2d 612, 632 (E.D. Pa. 1998))).

Using the formula for simple interest of "P x R x t = I,"

where "P" = Principal; "R" = Rate; "t" = time in years; and "I"

= Interest, the Court calculates that P ($585,796.20, the jury

award for breach of contract) x R (6% or 0.06) x t (3.326 years

since the payments were due on September 17, 2019) = I ($116,902.49).

PU contends that TZE is not entitled to any pre-judgment interest on this claim because the jury's contract claim award does not represent a liquidated ascertainable sum owed under the contract since: (1) the amount was not specified in the March 22, 2019 email that made up the basic terms of the Essity contract, see Trial Ex. 14, Pl.'s Resp. Ex. A, ECF No. 106-2; and (2) the invoices that indicated the price of the goods at issue were not made out to PU but to Essity. See Trial Ex. 13, Pl.'s Resp. Ex. B, ECF No. 106-3.

The Court disagrees. The amount awarded by the jury is ascertainable and definite, and directly tied to the invoice amounts billed to Essity. The Essity contract required PU to submit to TZE the amount owed by Essity for the goods purchased, minus its commission. As discuss above, the invoices to Essity for the goods at issue amounted to $618,796.20. Thus, after subtracting PU's $33,000 commission, PU owed TZE $585,796.20 which was the exact amount of the jury verdict.

Thus, the Court will grant TZE's motion for pre-judgment interest on the jury's contract claim award in the amount of $116,902.49.

b.   Prejudgment Interest for Tortious
          Interference

Under Pennsylvania law, an award of prejudgment interest for non-contract claims is discretionary. Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc., 685 A.2d 141, 148 (Pa. Super. 1996) ("Our courts have generally regarded the award of prejudgment interest as not only a legal right [in contract cases], but also as an equitable remedy awarded to an injured party at the discretion of the trial court."). When interest is discretionary, courts consider: "(1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." Feather v. United Mine Workers of Am., 711 F.2d 530, 540 (3d Cir. 1983) (quoting Nedd v. United Mine Workers of Am., 488 F. Supp. 1208, 1219-20 (M.D. Pa. 1980)).

The jury awarded TZE $350,000 in damages for PU's tortious interference with the TZE-Essity relationship. Regarding the first and second Feather factors, TZE has diligently prosecuted the action, but does not claim that PU has been unjustly enriched. Thus, the first factor supports prejudgment interest while the second does not.

31

Regarding the third factor, courts in this Circuit have found that "prejudgment interest is compensation for the 'time value' of money damages awarded at trial, and is not duplicative of the principal damages." Vanalt Elec. Constr., Inc. v. Selco Mfg. Corp., No. 03-CV-6741, 2008 WL 63245, at *4 (E.D. Pa. Jan. 3, 2008) (citing Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 981 (3d Cir. 1984)); Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc., No. 16-CV-1343, 2017 WL 2840352, at *15 (E.D. Pa. June 30, 2017); Hecht v. Inv. #1113, No. 13-CV-5382, 2014 WL 12610217, at *7 (E.D. Pa. Dec. 1, 2014); Royal Ins. Co. of Am. v. Latrobe Const. Co., No. 00-CV-2128, 2006 WL 1997361, at *3 (W.D. Pa. July 14, 2006), aff'd, 283 F. App'x 967 (3d Cir. 2008).

Under the facts of this case, the Court agrees that the third factor weighs in favor of awarding prejudgment interest. There was evidence at trial that: (1) the TZE-Essity relationship resulted in $120,000-$140,000 profit per month for TZE, Tr.1 at 133:17-24; and (2) that the sale of TZE's paper to Essity could have continued for as long as "five years, ten years, 15 years," Tr.2 at 183:17-184:2. Thus, absent PU's tortious conduct, TZE would have likely realized $350,000 early in the relationship, so TZE lost some of the value of the $350,000 over time. This indicates to this Court that the interest is compensatory.

Finally, regarding the fourth factor, there do not appear to be countervailing equitable considerations that would militate against the interest. Instead, there are equitable considerations that militate for the interest. Some of PU's behavior during its relationship with TZE and in connection with the litigation has been questionable at best. For example, TZE discovered that PU had been switching TZE's invoices to Essity with PU's own invoices, which was contrary to the Essity contract. PU also failed to turn over during discovery the credit acknowledgement letter sent from PU to Essity, despite PU's counsel arguing that it was pivotal evidence. Additionally, PU's stated reason for why it continued to improperly hold the $508,851.38 Essity paid PU for TZE's allegedly defective paper (rather than release it to TZE) changed throughout the litigation. In fact, evidence at trial indicated that PU's final purported reason, that PU was holding the money in escrow, was false.

Weighing these four factors, the Court concludes that prejudgment interest is appropriate on the jury's $350,000 award for tortious interference. Thus, applying the formula P ($350,000) x R (0.06) x t (3.326) = I, the Court will award TZE prejudgment interest on this claim of $69,846.58.

2.   <u>Post-Judgment Interest</u>

In federal cases where jurisdiction is based on diversity of citizenship, an award of post-judgment interest is mandatory under 28 U.S.C. § 1961(a). <u>See</u> <u>Dunn v. HOVIC</u>, 13 F.3d 58, 60 (3d Cir. 1993) ("Section 1961 dictates that interest be awarded . . ."). The interest is computed daily and compounded annually until the judgment is paid in full. 28 U.S.C. § 1961(b). "[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." <u>Id.</u> § 1961(a). Moreover, post-judgment interest "should be calculated on the amount of the district court's judgment . . . plus prejudgment interest." <u>Sun Ship, Inc. v. Matson Navigation Co.</u>, 785 F.2d 59, 63 (3d Cir. 1986). Here, the full jury award ($935,796.20) plus the prejudgment interest described above ($186,749.07) is $1,122,545.27. This is the amount with which the Court will calculate post-judgment interest.

PU's only argument against post-judgment interest is that it is premature pending resolution of PU's post-trial motions. Given that the Court has now ruled on those motions, an award of post-judgment interest is appropriate.

Because the Judgment was entered on Friday, January 13, 2023, the applicable interest rate is based on the weekly average 1-year constant maturity Treasury yield as of Friday January 6, 2023, or 4.71%.

Applying the now familiar formula, P ($1,222,545.27) x R (0.0471) x t (1 year) = I ($52,871.88) in yearly post-judgment interest. The daily interest is, therefore, $144.85 per day ($52,871.88/365). Pursuant to 28 U.S.C. § 1961, post-judgment interest will continue to accrue at the rate of $144.85 per day until January 13, 2024, at which time all accrued interest will be compounded, and the new daily amount calculated.

## IV. CONCLUSION

Because none of PU's post-trial motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), a new trial under Federal Rule of Civil Procedure 59(a), or to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) have merit, they will be denied. The Court will grant TZE's motion for pre and post-judgment interest having found that both are warranted for the breach of contract and tortious interference awards.

An appropriate order follows.